# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
10 Grand Central
155 East 44th Street – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102

December 29, 2020

**BY ECF**

Honorable Judge Robert W. Lehrburger, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:      *Zamora, et. al. v. L Plus L Productions*
      Case No.:  19 Civ. 1506 (RWL)

Dear Judge Lehrburger,

      We are counsel to the plaintiffs in the above-referenced matter, and jointly submit this letter with defense counsel for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. The parties consented to this court's jurisdiction [Docket 91], and the Agreement is being submitted contemporaneously with this letter (*See*, Exhibit A). For the reasons summarized in this correspondence, the parties respectfully submit that the settlement reached is fair and reasonable under every interpretation of the relevant authority in this Circuit, and we respectfully request that the Court approve the settlement reached with the assistance of the court on November 24, 2020, as memorialized in the attached agreement.

## I.   *The Need for the Court's Approval of the Agreement*

      As plaintiffs' action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of

any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

The parties respectfully submit that the settlement they reached represents a fair resolution of this matter, negotiated at arm's length between the parties all represented by experienced counsel, and with the assistance of the court.

## II.  *Plaintiffs' Claim for Unpaid Wages*

Plaintiffs consist of two (2) former employees of the defendants who worked in non-tipped capacity in the kitchen. They assert causes of action for, *inter alia*, unpaid wages and overtime compensation pursuant to the FLSA and New York Labor Law ("NYLL"). The following is alleged with respect to each of the plaintiffs:

### A. Plaintiff Fernando Zamora

Fernando Zamora worked in the kitchen of defendants' Mexican restaurant in the West Village. He was employed during approximately four (4) years. He claimed that he worked thirteen (13) hours per day four (4) days per week, and shorter hours two (2) days. He worked less shifts during slower seasons, notably in the wintertime when the restaurant is less busy. His compensation was a little unusual which made damages calculations complicated. His best recollection is he was paid an hourly rate of $14.50 for cooking and an additional $75.00 per day for the preparation work.

Defendants' had payroll records which purported that that Mr. Zamora worked overtime and was paid accordingly. Mr. Zamora disputed the veracity of such records.

Plaintiff acknowledged that performing calculations were difficult, admittedly, based on the payroll practices as Mr. Zamora recalls them. Plaintiff's counsel recalculated several times, and the latest calculations alleged an overtime deficit of $37,420 and spread of hours owed in the amount of $7,088.

### B. Plaintiff Fabian Octaviano

Fabian Octaviano also worked in the kitchen of defendants' restaurant during approximately four (4) years. He alleded that he worked approximately fifty-six (56) hours most weeks and just like Mr. Zamora, he did not get overtime compensation. Though he was not entirely clear, his best recollection is he was paid an hourly rate of $12.50 using a combination of two (2) checks. He signed a document which defendants claimed showed that he was paid properly. Additionally, defendants had a payroll chart for him which purported that he was paid appropriately. Like Mr. Zamora's, Mr. Octaviano alleged that the chart was created for purposes of this litigation and is not based on contemporaneous timekeeping records, and is not accurate.

Plaintiffs' counsel's calculations alleged an overtime deficiency of $24,000 and spread of hours premiums of $2,766 for Mr. Octaciano.

Apart from each other, plaintiffs did not have witnesses to support their case. With the factual disputes in existence, each party faced a significant risk in discrediting their adversary's evidence at trial. Moreover, the case was not certified as a collective action, and no additional individuals are represented or affected by the settlement.

### III. The Settlement

As reflected in the attached Agreement, after more than a year of litigation and with the assistance of the court, the parties agreed to settle the case for a total of $85,000 (consistent with the recommendation of Your Honor) to resolve all of plaintiffs' wage and hour claims against the defendants, payable in ten (10) installments as set forth in the agreement, commencing 30 days of the Court's approval of the Agreement.

Based on their length of employment, hours worked, and pay received, each of the plaintiffs will receive a *pro rata* share of the settlement, with Mr. Zamora receiving $34,000; Mr. Octaviano receiving $22,000; and attorneys' fees and costs $29,000 (one-third of the settlement and reimbursement of a portion of costs).

### IV. The Agreement is Fair and Reasonable

All parties believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about plaintiffs' claims, and express their appreciation to the court for mediating the case.

Honorable Judge Robert W. Lehrburger, U.S.M.J.
December 29, 2020
Page 4

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions, as well as with the assistance David White, Esq. during multiple mediation sessions. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013.

Moreover, one concern tending toward settlement was plaintiffs' legitimate concern about the collectability of an unsatisfied judgment against the defendants. *See Howard v. Don Coleman Advert. Inc.*, No. 16 Civ. 5060, 2017 WL 773695, at *1 (S.D.N.Y. Feb. 28, 2017) (finding that a plaintiff's "serious concerns about collectability...'militates in favor of finding a settlement reasonable'"); *see also Larrea v. FPC Coffees Realty Co., Inc.*, No. 15 Civ. 1515, 2017 WL 1857246, at *2 (S.D.N.Y. May 5, 2017) (same). There is always risk that a corporate defendant will have no collectable assets for this uninsured claim. This is especially true here as the defendants would likely not be able to withstand a larger settlement or judgment. Defendants operate a small neighborhood restaurant with limited financial resources and like the industry generally, has been disproportionately impacted by the COVID-19 crisis. The Agreement significantly decreases the risk of collection by permitting a reasonable settlement amount payable over time without the parties having to incur the expense and risk of trial.

In light of the various disputes concerning plaintiffs' claims, as discussed above, and the defendants' financial condition, this settlement should be approved. By settling now, plaintiffs at least receive a substantial portion of their alleged underlying wage claim, while enabling the parties to avoid the risks inherent in protracted litigation and trial. Based on our assessment of litigation risks, which we discussed

thoroughly with plaintiffs throughout the litigation as well as during multiple meeting with the mediator and the court, they made the decision to accept the defendants' offer. It is respectfully submitted that, in view of the foregoing, this settlement is a reasonable compromise of disputed issues and should therefore be approved.

### V.     Application for Attorneys' Fees

Pursuant to this firm's retainer agreement with plaintiffs, our firm will retain one-third of net proceeds of the settlement after expenses are deducted. Plaintiffs' counsel's costs of $864.00 consist of:

- Filing Fee: $400
- Service of Pleading: $114.00
- Investigator's fees: $350.00

Counsel seeks one-third of the settlement in fees, which is less than the firm's lodestar. Attorneys' fees in FLSA settlements are examined, to ensure that the interests of plaintiffs' counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). In this case, Plaintiffs' counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiffs prevailed, plaintiffs' counsel would have made a fee application for much more than the amount currently sought in fees.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees over in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement) (*citing Constantin Cionca v. Interactive Realty, LLC*, No. 15 Civ. 5123, 2016 WL 3440554, at *2 (S.D.N.Y. June 20, 2016) (approving a percentage fee that is "31.3% of the gross settlement amount" on an FLSA settlement, finding that the "percentage of the fund" method is generally acceptable in the Southern District); *see also Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6

(S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of gross settlement).

Notably, litigation in the instant case was more time-consuming than usual. In addition to the voluminous document review and complicated calculation of damages, the parties litigated multiple motions (collective action certification; dismissal of claims on the pleadings; motions for summary judgment; multiple discovery and sanctions motions). Both parties sought and interviewed witnesses, and we engaged in multiple rounds of mediation and settlement, both with the assistance of the court and the court-annexed mediation program. Rather than bill the case on an hourly basis, plaintiffs' counsel seeks one-third of the settlement, pursuant to his retainer agreement with the plaintiffs.

For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which provides that the Court will retain jurisdiction over this matter for purposes of enforcing the parties' settlement.

Should the court have any questions, counsel are available for a further telephone conference. On behalf of all parties, we thank the Court again for its consideration of this case and assistance in bringing the parties together to reach this resolution.

Respectfully submitted,

CILENTI & COOPER, PLLC

By: _____
Peter Hans Cooper, Esq.

cc: Zachary R. Landau, Esq.
    The Landau Group, P.C.